All rise. Oh yes, oh yes, oh yes. The Honorable Public Court, Fifth District, State of Illinois, is now in session. Please be seated. Good morning. First case on the docket is City of Vandalia v. G & T Holdings. Mr. O'Day for the appellant. Mr. West for the accolade. Mr. O'Day, whenever you're ready, sir. May it please the Court, Counsel. I tried a case in Fayette County, in this case, to a jury verdict. I lost the case. And now I'm here trying to tell you that I shouldn't have lost the case because the motion to dismiss should have been granted before we even had a trial. And in the middle of the trial, the motion for directed verdict should have been granted. Our sole basis for appeal on either the motion to dismiss or the directed verdict is a question of law for the Court. That question of law pertains to whether Section 65A of the Smoke-Free Illinois Act requires that a non-rural municipality, such as the City of Vandalia, that they have any regulation of smoking, which is the term used in Section 65A, a regulation of smoking, that when they do exercise their discretion to impose a regulation of smoking, and that I'm saying there's discretion to do that, is that the statute uses the word may, and under your decision fairly recently in the Tribe Power case that we've cited in our brief, you've interpreted the word may in connection with a grant of authority for a non-rural municipality to vest discretion. Then Section 65A, though, uses the word must after that. And in using the word must, it says that the regulation must be no less restrictive than this act. And so that's sort of the tinkered-ever chance that we have under the statute in Section 65A, and why we think that the City of Vandalia was required in any regulation of smoking that it imposed to make the regulation at least as restrictive as the state statute. We don't think that the city did that. The city didn't apply its regulation of smoking to all public places. Section 10 of the Smoke-Free Illinois Act defines public places very broadly, and they include not only taverns and bars, which are specifically listed in Section 10's definition of public place, but it also includes all kinds of other types of buildings that wouldn't necessarily be licensed. And indeed, it even includes public buildings. Now, Judge Sanders, when she ruled on our motion to dismiss, she said that she had thought about the issue that we raised very carefully, and there's no doubt that she probably did. And she decided then, after considering it carefully, that she thought that the city could only apply this regulation to licensed businesses. And that's what she said when she ruled. Well, we know that that can't be right, because in Section 65A, when it grants a non-home rule unit the authority to regulate smoking, it says in public places. It doesn't say in licensed places. It says in public places. And so our contention is that the city had broader authority than what the city claims it had. It had the authority to pass regulations of smoking in all public places, not just ones that were licensed. Well, you know, I mean, the context of all this is about smoking. And the statute says it can't be less restrictive. Why shouldn't we just interpret that as meaning they can't allow smoking in places where the state statute bans it? The context of the legislative history, which I've taken pains to discover and put out in my brief, starting with the Illinois Clean Indoor Air Act in 1990, and then moving forward to the Smoke-Free Illinois Act in 2008, we've shown that it's always applied to public places. And that's where the legislature has never put language in there that says, well, you can, as a municipality, regulate smoking by defining the term. Like, you can allow smoking cigars, or you can allow smoking of pipes, but you can't allow smoking cigarettes. They've never done that. They've always described it as either public places or indoor enclosed areas. This is in Section 65E. Well, Vandalia's ordinance doesn't allow smoking any place that the state statute bans it, does it? No, it doesn't allow it. I mean, let's say they had passed an ordinance that said we're going to allow smoking within five feet of an entrance or exit. That would be less restrictive, certainly, than the state statute. Yes, it would. Agreed. I mean, are we parsing this a little too much? I mean, the bottom line is the ban on smoking in Vandalia is not less restrictive as far as smoking goes than the state statute, because it doesn't permit smoking someplace that the state bans it. True? Well, it doesn't purport to allow it in more places, nor does it purport to ban it in as many places either. And if you look back to the time when the Smoke-Free Illinois Act was passed in the Senate, Senator Cronin said at the time that he was particularly pleased that this is a fair and even-handed bill that treats all businesses and industries the same. There's no special treatment of anyone. Well, here they do have a delineation of only applying to licensees rather than to all businesses in the city of Vandalia. It's our contention that they're going after sort of the low-hanging fruit here, the taverns, and not going after the other businesses that fall within the parameters of Section 10's definition of public places. Okay. And the sole source, let me make sure I understand your argument, the sole source of your contention that they must, if they're going to pass an ordinance, they have to ban it in all public places, is the Smoke-Free Illinois Act and the use of the word must. In the absence of that, they could pass an ordinance that doesn't, I mean, necessarily cover everything a state statute does. Well, I think that if they were home rule municipality, they could pass that in the absence of Section 65A. But since they're not home rule, they have to have a source of a grant of authority under Dillon's rule to do that, and their only source that they have is Section 65A. Now, if there were no Section 65A, it would be our contention that they would not, they'd have to find a grant of authority somewhere else to regulate smoking if they could, and that there is none. It's consistently always been in either the Clean Indoor Air Act or in the Smoke-Free Illinois Act, which repealed the Illinois Clean Indoor Air Act. The, we, besides the plain meaning of the statute, the way it's worded with the may and the must, and the use of the term public places, not licensed places, but public places in Section 65A, we've also relied on the case law under Dillon's rule to say that they have to find a specific empowerment. They can't just legislate in the abstract here. The Dillon's rule, I'm not a municipal lawyer, but I always found myself sort of a pro-tavern rather than a municipal lawyer, but the, under Dillon's rule, I thought it was sort of fascinating that that was something that came about in the 1800s by a distinguished jurist from Iowa, still called that even today, in your opinion, this year in 2012, you referred to Dillon's rule, so when we were pretty used to calling things venerable rules or time-honored rules, but this one really is one. We're not just calling it that, and it was carefully contemplated at the time of the convention in 1970. Dillon's rule existed as to all municipalities before that, and then in 1970, Dillon's rule was eliminated for the home rule municipalities and then made applicable only to the non-home rule entities such as non-home rule municipalities and the non-home rule counties, which I understand to be every county, but look, it's a non-home rule county in Illinois. But the legislature in this circumstance, the legislature made the rules the same whether they're home rule or non-home rule, and in section 65A, if you're home rule, you've got to make it at least as restrictive, and if you're non-home rule, you've got to make it at least as restrictive. I think the legislature thought it was very important to have a broad statute that applied equally to all businesses, didn't just pick on some, but picked on all of them to have this law apply, and in this case, the city of Vandalia hasn't honored that spirit of the Smoke-Free Illinois Act because it's substantially cut down the number of places that are deemed to be public places and have this rule applicable to them, and so for that reason, we'd ask you to reverse the report, and I'd be happy to answer any other questions. Thank you. I have an opportunity to move the bill. Good morning, members. May it please the court. My name is Trent West, and I represent the city of Vandalia, the plaintiff of L.A. in this matter. The city urges this court to affirm the decisions of the Fayette County Circuit Court, both denying defendant and G&T holding companies motions to dismiss and motions for a directed verdict, because, first of all, the city did not enact its own smoking prohibition pursuant to the Smoke-Free Illinois Act. Second, this ordinance simply regulates licensees. There's not an outlawed ban on smoking throughout the municipality. The ordinance is not less restrictive than Section 65A of the Smoke-Free Act. First of all, the ordinance does not permit any smoking that the statute itself prohibits. Therefore, it does not infringe upon that state law. Second, it's unclear whether the no less restrictive language under 65A goes to the places that must be restricted or the restrictions set out in the places that are restricted. The ordinance also applies to all businesses and organizations throughout the city. Like the trial report correctly stated, applies to these that a municipality can and does control. Further, the state gift ban comparison that's set out in the felon's brief is an unsupported comparison to the Smoke-Free Illinois Act. And lastly, the ordinance is not overbroad and beyond the scope of the city of Vandalia's authority. I would like to first bring up an issue, as Your Honors pointed out, the type of restriction versus places restriction aspect. GNC Holding is saying that if the city of Vandalia chooses to regulate smoking in any fashion, they must regulate it in every public place throughout their entire municipality. But that theory is basically unsupported by law. The only support that is in the legislative history is Senator Cronin's statement saying that this is a fair and even-handed bill that goes to all businesses and industries. When in fact, it doesn't go against all businesses and industries. It differentiates between public industries and private industries. So if we're looking at an interpretation that is all public places, all places this must apply to, and we're relying on that statement through a senator's statement, which I respectfully disagree with, that it's a fair and even-handed bill that applies to all businesses. When in fact, it's not fair. It doesn't apply to all businesses. It only applies to public businesses. Senator Cronin's statement goes more in line with the type of restriction to where if you were going to regulate a public place, in the city of Vandalia's instance, a municipal instance, a licensee, then you must put on the same types of restrictions on that licensee as the state puts on that licensee or any other law would require. Therefore, you need to have the no smoking within 15 feet requirement. You need to have a requirement to where signs need to be posted and ashtrays put on. You cannot allow smoking in that establishment. And that goes directly to the city's authority. We're not arguing that the city of Vandalia isn't a non-home rule municipality. It is. It's under 25,000 people. It is not elected to be a home rule municipality. Therefore, it cannot enact any ordinances that infringe on the state law or is repugnant to the general policy of the state. And the test for that is whether or not the ordinance prohibits something the statute permits or the ordinance permits something the statute prohibits. The statute here prohibits smoking. The ordinance here for the city of Vandalia does not permit smoking in any of the establishments that the statute prohibits. Therefore, it neither infringes upon the state law, the Act, the Smoke-Free Illinois Act, nor does it, or is it, repugnant against the policy of this state. And the city was given considerable discretion to regulate its licensees. And that's what it's done here. This is a regulatory ordinance of licensees. It is not a smoke-free Vandalia ordinance. It is not set out to solely ban all smoking in the municipality. The city is simply exercising authority that has been given by the Illinois Municipal Code, specifically 65 ILCS 5X-11, and the statute set out therein, to regulate its licensees. And that's what it's doing here. GNCU wants this to look like this is a smoking ban that I do exactly as I did with the Smoke-Free Illinois Act, word for word, no matter what applies to all the same public places. But that's not what happens here. This is simply a regulatory ordinance. The city has been given authority to regulate licensees. The legislature, the state, the county, all government wants the city to regulate licensees, to have that watching eye on those licensees. Therefore, it was given considerable discretion in doing it. And it shows through this ordinance, to where if the licensees have to comply with state law, they're fine, to try and deter future violations of any state laws. And so that's exactly what the city was doing. It was exercising its authority, granted to it by the Municipal Code, and in that, it enforced the Smoke-Free Illinois Act. And trial court correctly stated on page 280 of the record that that's exactly what the city was doing. They weren't enforcing a statutory violation of the Smoke-Free Act. They were enforcing an ordinance violation through licensees, as they have been given control to do. Yes, G&G has received a violation before, failing to reasonably assure that smoking was prohibited in its establishment, but it was done so through a regulatory ordinance because it was a licensee. It was not done so necessarily because it was a public place under the Smoke-Free Illinois Act. Because neither this act, that being the Smoke-Free Illinois Act, or any act such as the Liquor Control Act, that also applies to this ordinance, is mentioned in this ordinance. It is not set out to only cover one area of law and enforce that area. And this would be a different case if there was a wholesale adoption of the Smoke-Free Illinois Act, to where it started enforcing it in all public places via ordinance instead of via statute. And G&T, I'd like to speak on the reply brief for a moment, since I haven't had a chance to respond to that. And the reply brief stated that when there's a violation of the ordinance here, there's a fine that's assessed. And that fine is assessed. 100% of that fine goes to the municipality. But under the Smoke-Free Illinois Act, when there's a fine that is assessed, half the fine goes to the Illinois Department of Public Health. The other half goes to the local enforcing agency. And G&T correctly stated there's nothing in the Smoke-Free Illinois Act prohibiting the city from doing that. They're stating also, city, municipality, if you choose to regulate, you have to do it in this fine fashion. This fine procedure, you have to adopt the same thing. And they correctly say that that's not the case. And that goes to the point that this is not a Smoke-Free Illinois Act ordinance. This ordinance is a regulatory ordinance set up through the city so they can control their licensees and make sure they're complying with all Illinois laws. And also, in the reply brief, G&T argues that liquor sales and licensing are of no concern in this ordinance. They are not regulating liquor sales, liquor licenses through this ordinance. They're not even making an attempt to do so. But these arguments are conflicting, unsupportive, and incorrect. Because the ordinance itself states it must comply with all Illinois laws. One of those Illinois laws is the Liquor Control Act. And it applies to all licensees. One of those licensees are liquor establishments. So therefore, it directly applies to liquor licensing and sales and the prohibition set out therein. And if liquor licensees violate this ordinance, they will be fined, as G&T was in this case. So therefore, based on G&T's premise, if we're going to state that this licensing regulation does not at all apply to the Liquor Control Act because it doesn't expressly concern it or mention it, then the same works at the city's also not trying to prohibit smoking with this license. Because one, it doesn't say there's anything about smoking in the ordinance itself. It does not mention the Smoke-Free Illinois Act. And it doesn't outright show that it must comply with that act. It is just a general regulatory license saying it has to comply with Illinois law. Just so happens one of those laws is the Smoke-Free Illinois Act. The city also argues, as a proponent to our argument that this applies to all licensees equally, is that the city can't come in and say, well, we're allowed to regulate licensees. Therefore, we don't care about the Smoke-Free Illinois Act. We can do whatever we want. That's not why we brought up that argument in our brief. We brought up that argument in our brief, showing that we have the authority to brawl it for, to regulate licensees, because we were granted that authority. And it goes to there too broadly. The city's throwing in, well, in case this court finds that the ordinance isn't invalidated because it violates the Smoke-Free Act, this should be invalidated because it's entirely too broad. That's not the case. Under municipal authority, it has been granted, as in the city, has been granted authority to regulate its licensees. That regulation does not have certain parameters or limitations on it disallowing the prohibition that was allowed in this case. Or that was disallowed in this case. It has that authority, and it was exercised in exactly that. It's authority to regulate its licensees within the municipal authority. So therefore, it is not too broad. And looking at my brief, and looking at the statute cited there, and in 65 ILCS, 5 Acts, Office 11, it shows we can regulate licensees. We can regulate tax dependents at two partners. GNC raises the point, well, they don't have those places. So therefore, they're not enforcing those. That's not what matters. What matters is if we have someone that applies for a license. They qualify as a public place. The licensing provision picks in. That Smoke-Free element of provision will also pick in through that licensing regulation. Well, it's a pretty broad ordinance. Yes, Your Honor. It is a pretty broad ordinance. I mean, it says the violation would be the occurrence upon the license premises of an event, activity, or circumstance which shall be or constitute an event, activity, or circumstance otherwise prohibited by Vandalia's Code or the laws of the State of Illinois. So, I mean, there's nothing in there about, you know, whether the licensee had anything to do with it. So I guess presumably if two people got in a fight and somebody committed an aggravated battery on the premises, you could fine the licensee because somebody hit somebody. Depending on the circumstances of that case. I mean, I know it has nothing to do with here, but I'm just talking about how broad this is. It is extremely broad. We will agree with this. It is under the general licensing provisions of the Vandalia Municipal Code. Therefore, it kind of cordons it down to licensees that can be fined under it. But it's also even giving... So I guess technically if a patron stole money out of the tavern owner's cash register, the tavern owner could be fined under this ordinance because an event occurred on the premises in violation of Illinois law. On this case, Your Honor, I cannot say anything that will disprove that fact. This is a discretionary ordinance to where in those circumstances it's more of did the licensee have control over that aspect? If the licensee... Well, it doesn't say anywhere in the statute that it has to be within the licensee's control or that they had to participate in it. It just says if any event or activity occurs there that's a violation of Illinois law, the tavern owner or the licensee can be fined. Yes, you are correct, Your Honor. It is an extremely broad ordinance. Our counter to that point is that the municipality has been given the authority to enact ordinances such as this through the regulatory power of you, given and authorized by the Illinois Municipal Code. It states in there that we can regulate liquor establishments. It does not say a restriction on our regulation towards liquor establishments. It does not limit our authorization. And as stated in cases such as Gibbonsburg v. City of Chicago in the Supreme Court case of 1966, before a municipality is allowed or authorized to regulate in a certain area, it has very broad discretion in doing that. That's all I know it is. Well, it has to be specific enough for people to know whether or not they're going to violate the law, right? I mean, it has to be specific enough for the public to know what's a violation of the law. Yes, that is true that it has to be that specific to where it puts people on notice of that. It's just an issue to where licensees have to be more on their guard about certain parameters and make sure that violations aren't occurring in their place. And in that regard, it's much for protection of themselves. It will make them do more work and be more on the lookout for certain things where laws are not violated. So I would like to talk about the State Gift Ban Act. The penalty, the GMT holding penalty, states that we should look to the State Gift Ban Act as an interpretation of the smoke-free Illinois. But this is a non-supportive comparison. The State Gift Ban Act puts an even greater restriction on municipalities, or on who they were controlling at that point, which was local government authority, than the smoke-free Illinois Act. It not only required local governments to enforce this act and adopt its provisions, it required them to adopt and enforce its prohibitions in a manner substantially in accordance with the requirements of the Gift Ban Act. That is language from the statute itself. The smoke-free Illinois Act, one, gave municipalities the discretionary authority to pursue this regulation and to regulate. And second, it had no language in it stating that if they do regulate, they have to do so in a manner substantially in accordance with the smoke-free Illinois Act and the requirements set out then. So once again, it goes back to the city exercising discretion. As GMT has correctly pointed out, they do have that discretion whether or not to regulate under the smoke-free Illinois Act. And they're exercising that discretion. Although the scope of the ordinance isn't substantially in accordance with and exactly the same, it prohibits smoking and it's not less restrictive. GMT goes further and tries to persuade the court, well, look at this Attorney General's opinion that I found. And this shows you right away that this is directly in line. First of all, Attorney General's opinions do not have the full force and effect of the law. And they're only given considerable weight if it's a question of first impression. This is not a question of first impression. This is a question of municipal authority in regards to locations in its municipality, especially licensees. Therefore, that opinion is not supportive of what they are arguing. So in summation, GMT is throwing multiple arguments at it. Say, violates Smoke-Free Act. Well, if you don't think about the Smoke-Free Act, it violates it. But none of them are supported by the law stated. And none of them should succeed. The city's ordinance does not mention or solely apply the act. It has not created any exceptions to the act. The ordinance does not prohibit anything that's, does not permit anything that the statute prohibits. And it is not like the city adopted its own smoking ban ordinance. The city simply enacted an ordinance using authority that was given by the Illinois Municipal Code. And for these reasons, the city of Vandalia urges this court to affirm the decisions of the Fayette County Circuit Court. Denying GMT is a motion to dismiss and a motion for a direct verdict. The city thanks this court for its time. Thank you, Counselor. Mr. Butler. You can search the Illinois statutes and you'll not find a statute that says to non-home rule units that they can receive all of the laws of the state of Illinois as their ordinance in one fell swoop. Like this one does. In fact, that's the difference between home rule and non-home rule. Home rule is presumed to have the full authority that the legislature has, unless the legislature's taken the power away, or there's some implication that the legislature wanted there to be preemption of such a regulation. For non-home rule, they've got to find a specific authorization for a statute, not just say we're going to adopt all of the laws of the state of Illinois and apply them as if they're a city ordinance. On page 8 of our brief... Well, I mean, really they're doing more than that, aren't they? They're saying, if anybody else violates any laws of the state of Illinois on the premises, we're going to fine you, whether you had anything to do with it or not. If I go in there and fill out my income tax return and I lie on it while I'm sitting at the bar, somehow that makes the bar... You're stating. I'm stating. And so, you know, if they don't have the authority to enact something this breathtaking, a home rule might be able to come closer to it, but even a home rule that would adopt an ordinance like this, they would no doubt run afoul of some specific instances where the legislature banned them from legislating and where by implication they shouldn't be legislating. On page 8 of our brief, we cited both Section 65A and B of the Smoke-Free Illinois Act, and if you'll notice in the context of that, the whole thing is place-oriented, not like what's the act of smoking-oriented or license-oriented. It's place-oriented because in 65A, it gives the non-home rules authority to regulate smoking in public places, and then it goes on to say what we've been talking about. Then in 65B, it talks about other kinds of places that can be regulated, those other kinds of places being ones that don't fall within the definition of a public place, but nonetheless, they're workplaces. And so, once again, the context suggests that the legislature had in mind, you know, its broad term, public places, rather than anything else, and that when it talks about must be no less restricted, it's talking about the types of places. Now, for under 65B, they did not put anything in there about it has to be no less restricted than the state statute. And so, for non-public places that are covered by 65B, they didn't include that same condition. Well, here, the evidence was, and there's no dispute, that the defendant in this case is a public place, doesn't fall under 65B, but nonetheless, by the structure and your tri-power case, where you look at the context, sort of like you can sometimes tell how people are by the company they keep. Here are the words by the company they keep. In 65A and B, you can judge the words. Thank you. Thank you both for your recent arguments. The court will take the matter into advisement. Mr. Winston, thank you very much.